# SUPREME COURT OF TENNESSEE,

2L 627
3L 235

FOR THE

# EASTERN DIVISION.

## KNOXVILLE, . . . SEPTEMBER TERM, 1879.

---

### E. A. Yost *v.* A. S. Hudiburg and Wife.

FRAUDULENT CONVEYANCE. *Of property by husband to wife, set aside.*
Chancery *Practice and Pleading.* Upon bill being filed to subject wife's
property to husband's debts, charging the conveyance of same to wife
by husband as fraudulent, the court say, had the answer to the bill
stopped with a simple denial of the allegation that the means of the
husband paid for the property, the *onus* would have been upon the
complainant to prove the allegation; but the answer having gone far-
ther, the complainant is entitled to the benefit of all the admissions,
and he is at liberty to draw any legitimate inference from such state-
ments, though it be to establish fraud in the face of the general de-
nials of the answer. And where the wife obtained the means with
which to purchase the property in controversy from the sale of other
property, though the manner of acquiring such property is not at-
tacked by the bill, yet as the defendants set up these other convey
ances, they must show that they are valid and *bona fide.*

---

### FROM KNOX.

---

Appeal from the decree of the Chancery Court at
Knoxville.   O. P. TEMPLE, Ch.

T. R. CORNICK, Sr., for complainants.

627

HENDERSON & JOURLMON and G. WASHINGTON for respondents.

McFARLAND, J., delivered the opinion of the court.

The allegations of the bill are, that on the 13th February, 1865, the complainant recovered a judgment for $829.35 and costs, against the defendant, A. S. Hudiburg, in the Circuit Court of Knox county, upon a note of which complainant was endorser for value. Four several executions issued on the judgment, to-wit: on the 18th April, 1865; 16th November, 1867; 19th March, 1868, and 31st March, 1871; that the net sum of $32.15 was realized by the sale of some land and paid on the judgment. The balance remained unpaid, the last execution having been returned *nulla bona.* That on the 28th of August, 1874, William Coffman conveyed to the defendant, Mrs. Leanah Hudiburg, the wife of the defendant A. S. Hudiburg, in consideration of $3,500, a house and lot in Knoxville. The bill charges, upon information and belief, that the consideration of this conveyance was the money or means of the said A. S., and that the purchase was made by him but the title taken to his wife, to defraud the creditors of said A. S. Hudiburg. The prayer of the bill is for satisfaction of the complainant's judgment, by a sale of the property referred to. In an amended bill, it is charged that Hudiburg and wife had conveyed the property to Thos. L. Williams, in trust to secure a debt of $1,000 to Mrs. Emily G. McCorkle, but the property was of value sufficient to satisfy both claims. The answers on oath are

waived.    The answer of Hudiburg and wife admit the conveyance of the property by William Coffman to Mrs. Hudiburg, but deny that the consideration paid was the money or means of said A. S. Hudiburg, and proceed to give in detail the history of the transaction, by which it was claimed that Mrs. Hudiburg became possessed of the means to pay for the purchase from Coffman as follows:    In 1859, A. S. Huburg became the owner of a half interest in a house and lot on Cumberland street in Knoxville.    Between that date and 25th September, 1862, Mrs. Hudiburg saved of her own earnings a few hundred dollars, with which, with the consent of her husband, she purchased the other half interest in the lot on Cumberland street. In the mean time said A. S. Hudiburg had purchased a lot on Market Square and built a house upon it, and to pay his indebtedness upon the last named property, Mrs. Hudiburg agreed to join her husband in a sale of the property and that he might use her part of the proceeds, upon his promise to convey to her an interest in the Market Square property in proportion to the amount of her money used in paying for the same.    Accordingly the Cumberland street property was sold on the 30th of April, 1863, for $2,000, and the money used by said A. S. Hudiburg as stated, but he neglected to make to Mrs. Hudiburg the promised conveyance of an interest in the Market Square property until the 14th of May, 1873, when he conveyed to her a two-thirds interest in said property, the conveyance being made in pursuance of said agreement, and upon the assumption that her money paid

two-thirds of the original costs.     Said A. S. Hudiburg
had, however, previously disposed of twelve feet of the
lot and had placed several incumbrances upon the re-
mainder.     This caused Mrs. Hudiburg to become ap-
prehensive, and at her request the conveyance of the
two-thirds interest of the remainder of the lot was
made to her.     The lot had in the mean time greatly
appreciated in value, and the twelve feet previously
sold off, the incumbrances on the lot, and an execu-
tion against A. S., were about sufficient to consume
his interest, and to prevent a sacrifice the lot was sold
for $6,000; out of the price, the indebtedness of A.
S. upon the lot was extinguished, and the balance went
to the purchase of the lot from Coffman conveyed to
Mrs. Hudiburg and involved in the present case.     Such
is the history of the transaction in the answer, sup-
ported by the several conveyances referred to.     The
complainant filed a transcript of the record of his judg-
ment from the Circuit Court, which was excepted to
by the defendant, and held by the Chancellor to be
competent evidence against Mrs. Hudiburg only for the
purpose of proving the rendition of the judgment and
a consequent indebtedness from that date.     The cause
was heard without other evidence except the transcript
of certain other chancery records, which were consid-
ered as read, but which do not appear to contain any-
thing very material.     Had the answer stopped with a
simple denial of the allegation that the money or means
of A. S. Hudiburg paid for the property purchased
from Coffman, the *onus* would have been upon the
complainant to prove the allegation; but the answer

having gone further, the complainant is entitled to the benefit of all the admissions; and while in the present attitude we must take the history of the transaction as stated in the answer, yet he is at liberty to draw any legitimate inference from those statements, even though it be to establish the existence of fraud in the face of the general denials of the answer.

It is argued that as none of the conveyances are attacked by the bill except the deed of Coffman to Mrs. Hudiburg, the other conveyances must be taken as free from fraud, and that it is sufficient to show that Mrs. Hudiburg purchased from Coffman with means derived from the sale of the other lot held by her under a deed valid, because not attacked. But we are of opinion, that as the defendant has undertaken to show how Mrs. Hudiburg became possessed of the means, if we can see from the entire history of the transaction that it originated in fraud, it will not be allowed to stand, although the other conveyances are not attacked. As the defendants set up these other conveyances, they must show that they are valid and *bona fide.* The money with which Mrs. Hudiburg made her first purchase in 1862 was in law the money of her husband, and it was therefore in the nature of a voluntary settlement upon the wife, and by presumption of law was fraudulent as to existing creditors, unless it be shown the husband had ample means besides for the payment of his debts.

It appears from the record of the Circuit Court, that the complainant commenced his action in 1859, three years before the conveyance was made. While

this record may not be evidence against Mrs. Hudiburg for all purposes, we think it is legitimate to show that the suit was pending when the conveyance was made, and that the judgment was recovered upon a claim then in existence. This being so, there is nothing to rebut the presumption that the conveyance was in fraud of the existing debt. It is not shown that said A. S. retained other means to pay his debts. This being so, Mrs. Hudiburg acquired no rights, as against creditors, from the sale of property thus conveyed. And again, it is a remarkable fact and hardly consistent with the *bona fides* of these transactions, that said A. S. Hudiburg used the proceeds of the sale of the first lot, and did not remember or comply with his promise to convey an interest in the other lot to his wife for ten years, and until after several executions upon complainant's judgment had been returned not satisfied. It too often happens that these promises are only remembered or complied with when the creditors of the husband are about to reach the property. Again, Mrs. Hudiburg and her husband became joint owners of the first lot, purchased for a few hundred dollars. In the end the husband loses everything and the wife becomes the owner of all that is left. This remarkable event has not been explained to our satisfaction. Without further comment, we are of opinion that the complainant is entitled to relief. The decree of the Chancellor will be reversed and a decree rendered for the complainant, subject to the claim of Mrs. McCorkle, which neither party controverts.